IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PETER LAZAR, individually, as a member of, and derivatively on behalf of EBROSELOW, LLC, a Virginia limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN GOBRON, SAFEDOSE, INC., DOMINIC BAGNOLI, JR., ANDREW WAGNER, and TYE NORDBERG, <br><br> Defendants. | Case No. 7:23-cv-125 <br><br> By: Michael F. Urbanski <br> Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on two motions: a Motion to Remand, ECF No. 32, from plaintiffs Peter Lazar and eBroselow, LLC ("eBroselow"), and a Motion to Dismiss, ECF No. 20, from defendants John Gobron and SafeDose, Inc. ("SafeDose"). Both motions are opposed, ECF Nos. 44, 49, and each movant has filed a reply in support of their motion, ECF Nos. 50, 51.

For the reasons below, the court concludes that it lacks subject matter jurisdiction over this case. Therefore, the plaintiffs' Motion to Remand, ECF No. 32, is **GRANTED**, and Gobron and SafeDose's Motion to Dismiss, ECF No. 20, is **DENIED** as moot.

### I. Background

According to the Complaint, the "underlying dispute arises from irregularities, procedural deficiencies, conflicts of interest, breaches of fiduciary duty, minority oppression, misappropriation, and other breaches of contract related to and arising from a conspiracy

1

between certain Members of [eBroselow]"—specifically, EMP Holdings, LLC ("EMP") and the Charlotte-Mecklenburg Hospital Authority ("CMHA")—"by and through their appointed agents on the Board of Directors"—defendants Dominic Bagnoli, Jr., Andrew Wagner, and Tye Nordberg—"to sell eBroselow and its assets in a conflict-of-interest transaction, to the Company's own Chief Executive Officer," defendant John Gobron, "and his alter ego, SafeDose." ECF No. 1-1, at ¶ 2.

Plaintiffs allege that the defendants violated eBroselow's Operating Agreement ("OA") by failing to take several required votes of the Board of Directors and Class A Members while carrying out this self-interested, below-market-rate transaction as laid out in the Asset Purchase Agreement ("APA"), id. at ¶¶ 16–24; that the proceeds of the sale were payable only to EMP and CMHA, not eBroselow or its Members, even though Members like Gobron were saddled with tax liabilities from the transaction, id. at ¶¶ 25–32; that the defendant Directors permitted Gobron to use his title as eBroselow's CEO to convert and misappropriate eBroselow's retained assets for SafeDose's use, id. at ¶ 32; that Gobron submitted Articles of Termination to the Virginia State Corporation Commission ("SCC") despite lacking authority to do so under the OA, id. at ¶ 36; and that defendants have failed to adequately respond to plaintiffs' derivative demand letter seeking inspection of corporate records, re-institution of eBroselow's corporate entity status, and an investigation into the misconduct alleged here, id. at ¶ 38.

Based on these facts, plaintiffs seek several judicial declarations (Count Two), along with relief for breach of fiduciary duty (Count Three), breach of contract (Count Four), conversion and misappropriation (Count Five), fraud and fraudulent conveyance (Count Six),

2

business conspiracy (Count Seven), inspection of corporate records (Count Eight), and judicial dissolution (Count Nine). As forms of alternative relief, plaintiffs seek the appointment of Lazar as liquidating trustee to wind up eBroselow (Count Ten) or quantum meruit (Count Eleven).

## II. Legal Standard

Federal courts have original jurisdiction over cases in which complete diversity exists and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996). A corporation is a citizen of the state in which it was incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1); Hertz Corp. v. Friend, 559 U.S. 77, 80–81 (2010). The citizenship of a limited liability company, or LLC, "is determined by the citizenship of all of its members." Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).

Federal courts also have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has stated that a case arises under federal law within the meaning of § 1331 "if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 689–90 (2006) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27–28, (1983)).

"A defendant may remove any action from a state court to a federal court if the action could have originally been brought in federal court." Yarnevic v. Brink's, Inc., 102 F.3d 753 (4th Cir. 1996) (citing 28 U.S.C. § 1441)). Courts have a "duty to construe removal jurisdiction

3

strictly and resolve doubts in favor of remand." Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994).

### III. Analysis

Plaintiffs seek to remand this case to state court, arguing that the court lacks both diversity jurisdiction and federal question jurisdiction. For the reasons below, the court agrees.

### A. Diversity Jurisdiction

Plaintiffs argue that incomplete diversity between the plaintiffs and defendants deprives the court of diversity jurisdiction. Pls.' Mem. Supp. Remand, ECF No. 33, at 4–5.

Beginning with the defendants, Gobron is a Massachusetts resident, and therefore citizen. Compl., ECF No. 1-1, at ¶ 5. SafeDose, Inc., is a citizen of Massachusetts, as it is both incorporated in the state and has its principal place of business there. Id. at ¶ 6. Bagnoli is a citizen of Ohio, his state of residence. Id. at ¶ 7. Bagnoli holds an ownership interest in EMP, an Ohio LLC, which holds a membership interest in eBroselow. Id. Wagner is a citizen of Colorado. Id. at ¶ 8. Nordberg is a resident of North Carolina. Id. at ¶ 9. Nordberg is employed by CMHA, a North Carolina corporate hospital authority that holds a membership interest in eBroselow. Id. at ¶ 9.

On the plaintiffs' side, Lazar is a citizen of Virginia, as he resides in Montgomery County, Virginia. Id. at ¶ 3. eBroselow was a Virginia LLC, id. at ¶ 4, and takes on the citizenship of its members. Therefore, eBroselow was a citizen of, at minimum, Virginia, through Lazar, Ohio, through Bagnoli's ownership interest in EMP, and North Carolina, through CMHA.

4

When eBroselow's citizenship is considered, there is incomplete diversity, as eBroselow shares Ohio citizenship with Bagnoli and North Carolina citizenship with Nordberg. Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120–21 (4th Cir. 2004) (concluding that, in a derivative action by one member against another member, the court lacked diversity jurisdiction as the LLC took on the citizenship of its members). Defendants Gobron and SafeDose contend that the court should discount the citizenship of eBroselow—and therefore find complete diversity—for two reasons: because eBroselow has been cancelled and because eBroselow has been fraudulently joined. Defs.' Opp. Remand, ECF No. 49, at 3–10.

### 1. Citizenship of a Cancelled LLC

Pointing to the Articles of Cancellation filed on behalf of eBroselow with Virginia on March 22, 2021, Gobron and SafeDose urge the court to disregard the LLC's citizenship when determining whether there is complete diversity. Notice Removal, ECF No. 1, at 2–3. Because the Virginia Code, case law, and public policy considerations indicate otherwise, the court disagrees.

Several provisions of the Virginia Code expressly contemplate suits by or against a cancelled LLC. The code section governing articles of cancellation provides that, upon the effective date of certificate of cancellation, "the existence of the limited liability company shall cease, except for the purpose of suits, other proceedings, and appropriate actions by members as provided in this chapter." Va. Code Ann. § 13.1-1050(B) (emphasis added). Another provision recognizes the survival of remedies after an LLC's cancellation:

> The cancellation of existence of a limited liability company shall not take away or impair any remedy available to or against the limited liability company or its members or managers for any right or claim existing, or any liability incurred, before the

5

> cancellation. Any action or proceeding by or against the limited liability company <u>may be prosecuted or defended by the limited liability company in its name</u>. The members or managers shall have power to take limited liability company action or other action as shall be appropriate to protect any remedy, right, or claim.

Va. Code Ann. § 13.1-1050.5 (emphasis added). Read together, these two provisions indicate that a cancelled LLC exists for the purposes stated in § 13.1-1050(B), and that it has the capacity to sue or be sued in its own name.

Virginia courts have adopted this reading on several occasions. In <u>Furr v. Signal Hill Supply & Serv., Inc.</u>, the single member of a cancelled LLC filed suit in his own name, claiming that the defendant had breached its contract with the now-cancelled LLC. 102 Va. Cir. 31, at *1 (Va. Cir. 2019) (unpublished). The court held that Virginia Code § 13.1-1050(B) "expressly preserved a cancelled LLC's authority to bring suits" and that the cause of action belonged to the cancelled LLC, not its member. <u>Id.</u> at *1–2. Therefore, the member lacked standing to bring the claim. <u>Id.</u> In <u>Farmville Grp., LLC v. Shapiro Brown & Alt, LLP</u>, a member of a cancelled LLC attempted to pursue a claim while representing the LLC <u>pro se</u>. 101 Va. Cir. 81, at *1–2 (Va. Cir. 2019) (unpublished). The court recognized that "[i]t is commonly accepted an LLC, upon cancelation, generally ceases to exist." <u>Id.</u> at *2. The court continued, remarking that:

> Virginia Code § 13.1-1050.5 clarifies the cancelation of an LLC does not eradicate the LLC's right to pursue any remedy for a right or claim existing pre-cancelation. Indeed, post-cancelation, the LLC may prosecute any such claims in its name. The law regards a cancelled LLC as <u>continuing to exist</u> solely for this purpose and empowers its former members or managers to initiate an action in the LLC's name, a power not accorded to them pre-cancellation. To be sure, <u>the cause of action continues to belong to the LLC</u>, and the statutory authorization accorded

6

> to former members or managers to bring a suit in the name of the LLC post-cancelation does not permit them to proceed as the quasi-attorney-in-fact or pro se representative of the LLC.

Id. at *3 (emphasis added). Here, eBroselow exists for the purposes of a lawsuit, can "own" a cause of action, and can maintain a suit in its own name. With these factors present, the court must consider eBroselow's citizenship in determining its jurisdiction over the case. See, e.g., Go Fast Sports & Beverage Co. v. Buckner, No. CIV.A.08-CV-01527MSK, 2008 WL 2852626 (D. Colo. July 23, 2008) (reasoning that the citizenship of a dissolved LLC must be considered if the "LLC continues to exist under state law after" dissolution).

At least one other federal court evaluating Virginia law has come to a similar conclusion. In State Farm Mut. Auto. Ins. Co. v. Old Dominion Ins. Co., the court lacked information on the citizenship of the members of a cancelled LLC. No. 7:20-CV-00754, 2021 WL 3513664, at *3 (W.D. Va. Aug. 10, 2021). Complete diversity would have existed if the court decided to ignore the citizenship of the dissolved LLC, as Gobron and SafeDose now urge the court to do here. Id. However, absent this information, the court granted remand because it could not "be assured of its own jurisdiction." Id.

Defendants Gobron and SafeDose cite to several cases to support the proposition that courts ignore the citizenship of non-existent entities. Defs.' Opp. Remand, ECF No. 49, at 6–7. While this court has already determined that a cancelled LLC does exist for limited purposes, it is worth noting that the cited cases deal only with named parties who were never legal entities. See Holt v. Food Lion Grocery Store of Chester, No. 3:18-CV-503, 2019 WL 112788, at *4 (E.D. Va. Jan. 4, 2019) (finding that "Food Lion Grocery Store of Chester" was not a legal entity at all, but considering the citizenship of "Food Lion, LLC"); Simon v. Dick's

7

Sporting Goods, Inc., No. CV JKB-22-1238, 2022 WL 16722400, at *3 (D. Md. Nov. 4, 2022) (concluding that "an individual retail location of the DSG corporation[ ] is not a legal entity with the capacity to be sued"); Gaynor v. Empirian Vill. of Maryland, LLC, No. 22-CV-01940-LKG, 2023 WL 1784679, at *1, 4 n.2 (D. Md. Feb. 6, 2023) (noting that the trade name of the defendant was not a separate legal entity capable of being sued).

Finally, the court notes that considering the citizenship of a cancelled LLC deters gamesmanship by those who might fraudulently cancel an LLC for the purpose of securing federal diversity jurisdiction. If a suit involving an LLC was non-diverse pre-cancellation, it should not become diverse simply because—as plaintiffs allege happened here—an individual lacking authority files articles of cancellation. Furthermore, declining to consider a cancelled LLC's citizenship, in spite of case law stating that the LLC continues to exist for the purpose of suits, "would frustrate the State's purpose of facilitating the resolution of claims by and against the [LLC] and would serve no federal interest." Ripalda v. Am. Operations Corp., 977 F.2d 1464, 1468 (D.C. Cir. 1992) (holding that the citizenship of a dissolved corporation must be considered where state law provided that the entity was still subject to suit).

### 2. Fraudulent Joinder

Defendants Gobron and SafeDose claim that eBroselow was fraudulently joined and that the court may therefore disregard its citizenship. Notice Removal, ECF No. 1, at 4–5; Defs.' Opp. Remand, ECF No. 49, at 3–5. The doctrine of fraudulent joinder "permits removal when a non-diverse party is (or has been) a defendant in the case," allowing "a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse

defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).

Two of Gobron and SafeDose's arguments in support of fraudulent joinder are easily rejected. First, they contend that "because eBroselow is a non-existent entity, it lacks the capacity to sue" and "has therefore been fraudulently joined." Notice Removal, ECF No. 1, at 4. As discussed above, eBroselow exists for the purpose of suits and has the capacity to sue and be sued in its own name. Second, Gobron and SafeDose argue that plaintiffs failed to address the issue of fraudulent joinder and, by consequence, have conceded it. Defs.' Opp. Remand, ECF No. 49, at 3–4. However, "[s]ubject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009). Because the question of subject matter jurisdiction "involves a court's power to hear a case," Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)), and fraudulent joinder is often dispositive as to subject matter jurisdiction, plaintiffs cannot concede the point by merely failing to respond to it. Further, the plaintiffs did, in fact, respond via their assertion that eBroselow is a necessary party. Pls.' Mem. Supp. Remand, ECF No. 33, at 2.

Gobron and SafeDose's third and final argument in favor of a finding of fraudulent joinder is that there is no possibility that eBroselow could succeed in this action.

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

Marshall v. Manville Sales Corp., 6 F.3d 229, 231 (4th Cir. 1993) (internal quotations omitted) (emphasis in original). Further,

> The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor . . . This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). "This standard heavily favors the [plaintiffs], who must show only a 'glimmer of hope' of succeeding against the . . . defendants." Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015) (quoting Mayes, 198 F.3d at 233). "A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." Marshall, 6 F.3d at 233.

The court finds that Gobron and SafeDose have not satisfied this high standard, as the court concludes that eBroselow could possibly establish a cause of action against the defendants. Gobron and SafeDose summarize their arguments as follows: plaintiffs ratified defendants' conduct by their inaction and retention of benefits; plaintiffs' claims are barred by laches; and plaintiffs' claims are barred by the in pari delicto and unclean hands doctrines. Defs.' Opp. Remand, ECF No. 49, at 5. These defenses would apply to all defendants, not just those alleged to be non-diverse. Some circuits have recognized that, when the no-possibility-of-success standard is met for resident and non-resident defendants alike, "there is no improper joinder; there is only a lawsuit lacking in merit." Riverdale Baptist Church v. Certainteed Corp., 349 F. Supp. 2d 943, 951 (D. Md. 2004) (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 574 (5th Cir. 2004) (en banc).

There is at least a "glimmer of hope" that eBroselow's claims would survive each of these defenses. First, plaintiffs dispute that eBroselow received any benefit from the transaction, instead arguing that the benefit of the purchase price bypassed eBroselow and went straight into the pockets of two of its members, see Compl., ECF No. 1-1, at ¶¶ 31, 98; Pls.' Opp. Mot. Dismiss, ECF No. 44, at 10–12. Without a benefit, it is possible that a court could find that eBroselow did not ratify the APA by acquiescence. See, e.g., Kilby v. Pickurel, 240 Va. 271, 275, 396 S.E.2d 666, 668–69 (1990) (holding that one may ratify an unauthorized act by "accepting its benefits with full knowledge of the relevant facts . . . or, if upon learning of the act, he fails promptly to disavow it") (emphasis added).

Second, a court could agree with plaintiffs and conclude that at least some of plaintiffs' claims were timely filed. For example, a court could apply Virginia law and find that the breach of contract claim in Count Four is subject to a five-year statute of limitations. See Va. Code Ann. § 8.01-246(2). Even if a court were to apply Delaware law, as Gobron and eBroselow urge, a court could find that this breach of contract claim is subject to a four-year statute of limitations. See Del. Code Ann. tit. 6, § 2-725. Gobron and eBroselow contend that, "[u]nder Delaware law, laches can bar a claim even though the statute of limitations has not run." Defs.' Br. Supp. Mot. Dismiss, ECF No. 20-1, at 9. To do so, the court would be required to find prejudice from the delay, Whittington v. Dragon Grp. L.L.C., No. CIV.A. 2291-VCP, 2008 WL 4419075, at *7 (Del. Ch. June 6, 2008), and it is at least possible that a court would find insufficient prejudice to defendants in this case.

Third, a court could find that the alleged misconduct was not imputed to eBroselow and decline to apply the in pari delicto or unclean hands doctrines, as Gobron's interests were

11

sufficiently adverse to those of eBroselow. In re Derivium Cap. LLC, 716 F.3d 355, 367 (4th Cir. 2013) ("Under the 'adverse interest' exception, the wrongs of an agent are not imputed to the principal if the agent acted adverse to the principal's interests.").

Plaintiffs may go beyond simply overcoming these three defenses. Assuming, as the court must, that all issues of law and fact are resolved in the plaintiffs' favor, and resolving all doubts in favor of remand, it is possible that plaintiffs might establish at least one of their claims against defendants.

Take, for example, the breach of fiduciary duty claim in Count Three. While claims of this nature are usually subject to a two-year statute of limitations, there is at least a "glimmer of hope" that a court could find this claim equitable in nature, conduct a laches analysis, and conclude that plaintiff has not "unreasonably slept on his rights." PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 121 (4th Cir. 2011); see also Plumbers & Steamfitters Union Loc. No. 10 v. Waters, 451 F. Supp. 3d 543, 551 (E.D. Va. 2020) (explaining a laches analysis in the context of a breach of fiduciary duty claim); Kirgan as trustee of Clarence Manger & Audrey Cordero Plitt Tr. v. Manufacturers & Traders Tr. Co., 810 F. App'x 187, 196 (4th Cir. 2020) ("[A]s a general rule, breach of fiduciary duty claims were historically within the jurisdiction of the equity courts.") (internal quotations omitted). Further, a court could find that, based upon the facts alleged, the APA represented an impermissible conflict of interest transaction, resulting in damage to the LLC. See, e.g., DCG & T ex rel. Battaglia/Ira v. Knight, 68 F. Supp. 3d 579, 590–91 (E.D. Va. 2014) (holding that the plaintiffs stated a derivative claim for a conflict of interest transaction in which directors had an interest in the entities with which the company merged).

## B. Federal Question Jurisdiction

Finally, Gobron and SafeDose argue that the court has federal question jurisdiction over this matter because the plaintiffs' claims arise under the Copyright Act. Am. Notice Removal, ECF No. 48, at 2–5. Gobron and SafeDose attempt to ground this argument in plaintiffs' citation to Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962 (2014), in their Opposition to the Motion to Dismiss, ECF No. 44, at 12. Plaintiffs accurately described this case as interpreting the relationship between laches and the Copyright Act's statute of limitations, and then applied Petrella's rationale to their own claims under Virginia law. Despite Gobron and SafeDose's contention, Am. Notice Removal, ECF No. 48, at 3, this is clearly not an invocation of the Copyright Act or its accompanying statute of limitations.

Gobron and SafeDose further cite "sprinkled references to intellectual property" in the Complaint, id. at 3, as raising "claims based on (and preempted by) the Copyright Act." Opp. Remand, ECF No. 49, at 2. Gobron and SafeDose point to five paragraphs in the Complaint—numbers 34, 35, 82, 92, and 117—which reference eBroselow's alleged property interest in "assets, intellectual property, and trademarks" that plaintiffs allege were improperly converted via the contested APA. Am. Notice Remand, ECF No. 48, at 2–3. Gobron and SafeDose state that they initially "did not understand" these references to mean that plaintiffs "were asserting a claim based on the Copyright Act" as "[t]he gravamen of the complaint is instead about alleged non-complian[ce] with supposed voting rights, unwinding a transaction, and compelling an inspection of books and records. Moreover, the complaint's prayer does not contain any reference to the Copyright Act nor to forms of statutory damages available under it." Id. at 3.

13

The court concurs with Gobron and SafeDose's initial reaction, as the Complaint does not assert claims based on the Copyright Act, but instead based on various state law causes of action such as breach of fiduciary duty and breach of contract. "A dispute over property ownership does not properly fall under federal law just because the property is a federally-created interest like a trademark or a copyright." Gibraltar, P.R., Inc. v. Otoki Grp., Inc., 104 F.3d 616, 619 (4th Cir. 1997); see also Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177, 182–83 (4th Cir. 2014) (concluding that a dispute over ownership of intellectual property such as copyrights does not necessarily raise a significant federal issue). Like in Flying Pigs, LLC, the issue here is not the validity of any federal copyright. 757 F.3d at 182.[1]

## IV. Conclusion

For the aforementioned reasons, the court concludes that it lacks subject matter jurisdiction over this case. Therefore, the plaintiffs' Motion to Remand, ECF No. 32, is **GRANTED**, and Gobron and SafeDose's Motion to Dismiss, ECF No. 20, is **DENIED** as moot.

It is **SO ORDERED**.

Entered: June 22, 2023

Michael F. Urbanski
Chief United States District Judge

---

[1] Gobron and SafeDose claim that the inclusion of Count Eleven requires a finding of federal preemption. Am. Notice Removal, ECF No. 48, at 2–3. This Count seeks, as a form of alternative relief, quantum meruit for the value of the assets wrongfully converted under the APA. While true that "unjust enrichment claims based on allegations of unfair copying and use are preempted by the Copyright Act," Christen v. iParadigms, LLC, No. 1:10CV620, 2010 WL 3063137, at *4 (E.D. Va. Aug. 4, 2010), unjust enrichment claims survive preemption when they are based on a "quasicontractual relationship between parties," Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd., 243 F. Supp. 2d 444, 450–51 (M.D.N.C. 2003), such as the APA in this case.